936 F.2d 573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roberto ALVARADO, Defendant-Appellant.
 No. 90-6058.
 United States Court of Appeals, Sixth Circuit.
 July 1, 1991.
 
 Before NATHANIEL R. JONES and SUHRHEINRICH, Circuit Judges, and JOINER, Senior District Judge*.
 PER CURIAM.
 
 
 1
 Defendant Robert Alvarado, who entered a conditional plea of guilty to possession of approximately 42 pounds of marijuana with intent to distribute, in violation of Title 21 U.S.C. Sec. 841(a)(1), appeals the district court's denial of his motion to suppress evidence seized incident to his arrest. Specifically, defendant argues that: (1) the police officers lacked a reasonable suspicion to stop defendant for questioning or probable cause to arrest him; and (2) defendant's consent to the search of his luggage was not voluntarily given. For the reasons stated below, we AFFIRM the district court's denial of defendant's motion to suppress evidence.
 
 I.
 
 2
 On April 23, 1989, Officer Reginald Drake of the DEA Airport Drug Task Force at Memphis International Airport received information from Airport Police in Houston, Texas that drug detection dogs had alerted on two suitcases which were in route to Memphis. After the suitcases which were described to Officer Drake arrived in Memphis, Lieutenant Bibbs of the Memphis Police Department, Organized Crime Unit, brought a drug detection dog to the scene. Lieutenant Bibbs' dog also alerted on the suitcases. The officers placed the suitcases on the baggage carousel and observed an individual, later identified as defendant, retrieve both suitcases.
 
 
 3
 Still under observation by the officers, defendant proceeded into the parking lot and approached a car with two other persons inside, later identified as Juan Mendoza, a friend of defendant's family, and Manuel Barrcio, Mendoza's son-in-law and a former schoolmate. Officer Drake, dressed in plain clothes approached the car, and told defendant that he and the other officers were conducting an investigation because of a positive dog alert on his luggage. Defendant, Mendoza and Barrcio all agreed to accompany officer Drake to the Task Force Office.
 
 
 4
 At the office, defendant signed a consent form allowing the officers to search his suitcases. However, there was conflicting testimony given at the suppression hearing about the nature in which the consent to search was obtained. Officer Drake testified that defendant was asked once for consent to search, at which time he gave his permission. Juan Mendoza testified that defendant was asked four to six times for permission to open the luggage, but that defendant initially did not respond. Mendoza also testified that defendant eventually granted permission.
 
 
 5
 Barrcio testified that the officers did not ask defendant for permission to open the suitcases while outside the airport and that they asked him "about two or three times once they arrived at the office." Both Mendoza and Barrcio testified that defendant was not threatened, coerced, or otherwise mistreated while in the airport parking lot or at the Task Force Office.
 
 
 6
 After defendant read and signed the consent form, the officers attempted to open the suitcases, but discovered they were locked. Defendant provided the key for one, and said that the officers could break the lock on the other. The suitcases were then opened and a large quantity of marijuana was found inside. Defendant was promptly arrested.
 
 
 7
 On December 8, 1989, defendant filed a motion to suppress the marijuana seized from his luggage. The matter was referred to a magistrate who conducted a hearing and recommended that defendant's motion to suppress the marijuana be granted on the grounds that the government failed to produce any evidence indicating that the dogs which "alerted" on defendant's luggage were trained to sniff for drugs.
 
 
 8
 On March 30, 1990, the district court conducted a hearing at which Lieutenant Bibbs testified that he and the dog had undergone a 12-week training course on the detection of marijuana and cocaine. Bibbs also testified that since that time they have carried out hundreds of searches, that he tests the dog each week to make sure that reliability is maintained, and that the test results indicate that the dog is 95% accurate in detecting marijuana and cocaine. On April 13, 1990, the district court rejected the magistrate's recommendation and denied defendant's motion to suppress the marijuana.
 
 
 9
 On April 27, 1990, defendant entered a plea of guilty to the one count indictment, subject to his right to appeal the denial of his motion to suppress. Defendant was sentenced to 15 months imprisonment followed by a three year term of supervised release.
 
 II.
 A.
 
 10
 Defendant argues that the officers lacked any articulable reason to stop or cause to arrest him in the airport parking lot. However, the Supreme Court has made it clear that a positive alert by trained drug sniffing dogs is enough to establish probable cause. Florida v. Royer, 460 U.S. 491, 505-06 (1983); see United States v. Knox, 839 F.2d 285, 288 (6th Cir.1988), cert. denied, 490 U.S. 1019 (1989). Thus, probable cause to arrest defendant existed from the moment he took possession of the luggage on which Lieutenant Bibbs' trained narcotics dog had previously alerted.
 
 B.
 
 11
 Defendant next argues that the search of his suitcase violated his right against unreasonable search and seizure under the fourth amendment. A person may waive fourth amendment protections by consenting to a warrantless search, as long as such consent is given freely and voluntarily. See United States v. Mendenhall, 446 U.S. 544, reh'g denied, 448 U.S. 908 (1980); Schneckloth v. Bustamonte, 412 U.S. 218 (1973).
 
 
 12
 First, defendant contends that he had no knowledge of the fact that he had the right to refuse consent. However, prior to the search, defendant read and signed a "consent to search" form which expressly stated his constitutional right to refuse consent. Second, defendant argues that he was coerced into signing the consent form by repeated statements by the officers that a warrant could be obtained. However, advising a defendant that a warrant can be obtained does not constitute coercion vitiating consent to search. See United States v. Dennis, 625 F.2d 782 (8th Cir.1980); United States v. Vasquez, 638 F.2d 507 (2d Cir.1980), cert. denied, 454 U.S. 975 (1981). Third, defendant argues that his initial refusals to consent are factors going towards involuntariness. The district court, however, rejected defendant's testimony that he initially refused consent, noting: "He was asked more than once by the officers if he would consent to the search of the suitcases. Significantly, however, Alvarado did not refuse to consent initially; he simply did not respond to the officer's inquiry. When he finally did respond, he signed a consent form and produced a key for one of the suitcases." These findings are supported by the testimony of Mendoza and Barrcio. In sum, we hold that the district court's finding that defendant freely and voluntarily signed the consent form was not "clearly erroneous."
 
 
 13
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior District Judge for the United States District Court for the Eastern District of Michigan, sitting by designation